601 S.E.2d 25

**STATE of West Virginia ex rel. Allstate Insurance Company, Petitioner,**

v.

**The Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County, West Virginia, Respondent.**

**No. 31392.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 24, 2004.

Filed: May 18, 2004.

Albright, J., dissented and filed opinion.

Maynard, C.J., concurred and filed separate opinion.

McGraw, J., dissented and filed opinion.

**710**

E. Kay Fuller, Esq., Walter M. Jones, III, Esq., Michael M. Stevens, Esq., Martin &amp; Seibert, L.C., Martinsburg, for the Petitioner, Allstate Insurance Company.

Christopher J. Regan, Esq., Bordas &amp; Bordas, Wheeling, for the Plaintiff Below, Cindy Jo Falls.

Ned Miltenberg, Esq., Center for Constitutional Litigation, PC, Washington, DC, for Amicus Curiae, American Trial Lawyers Association.

G. David Brumfield, Esq., Brumfield &amp; Watson, Charleston, Eugene R. Anderson, Esq., Anderson Kill &amp; Olick, P.C., New York, NY, Amy Bach, Esq., Law Offices of Amy Bach, Mill Valley, CA, for Amicus Curiae, United Policyholders.

Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger &amp; Metheney, PLLC, Morgantown, for Amicus Curiae, West Virginia Trial Lawyers Association.

Charles S. Piccirillo, Esq., Kelly R. Charnock, Esq., Shaffer &amp; Shaffer, PLLC, Madison, for Amicus Curiae, State Farm Mutual Automobile Insurance Company.

DAVIS, Justice.

The petitioner herein, Allstate Insurance Company [hereinafter referred to as "Allstate"], requests this Court to issue a writ of prohibition to prevent the respondent herein, the Honorable John T. Madden, Judge of the Circuit Court of Marshall County [hereinafter referred to as "Judge Madden"], from enforcing certain orders requiring Allstate to submit to discovery requests made by the plaintiff below, Cindy Jo Falls [hereinafter referred to as "Ms. Falls"].[1] Specifically, Allstate objects to the circuit court's rulings requiring it to produce documents and submit to depositions regarding matters which Allstate claims are protected by the attorney-client privilege and the work product doctrine. In rendering his rulings, below, Judge Madden found that the aforementioned privileges were inapplicable in the context of a first-party bad faith action and, even if the privileges applied, Allstate had not met its burden of proof to establish entitlement to the protections afforded by the privileges.

---

1. We also recognize, and appreciate, the participation of the various Amici Curiae in this case: the Association of Trial Lawyers of America, State Farm Mutual Automobile Insurance Company, United Policyholders, and the West Virginia Trial Lawyers Association.

Upon a review of the parties' arguments and the pertinent authorities, we grant as moulded the requested writ of prohibition.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The instant proceeding has its origins in the Circuit Court of Monongalia County, when, in 1990, Ms. Falls filed a civil action seeking to recoup damages she had incurred during a 1989 automobile accident. At that time, Ms. Falls had a policy of motor vehicle insurance with Allstate and, during the course of said litigation, Allstate paid Ms. Falls $100,000, which represented the liability limits of the other driver's insurance policy, and an additional $100,000, an amount equal to the limits of her underinsured motorists coverage under her Allstate policy. When Ms. Falls attempted to stack coverages under her Allstate policy, the parties' failure to resolve the claim resulted in its submission to arbitration. As a result of such arbitration, Allstate paid Ms. Falls an additional $429,143.90, plus pre-judgment interest in the amount of $64,205.12. Following these proceedings, the Circuit Court of Monongalia County dismissed Ms. Falls' case with prejudice by order entered September 24, 1999.

Thereafter, on September 25, 2000, Ms. Falls instituted the bad faith action underlying the instant proceeding. In that suit, Ms. Falls alleged that Allstate, and its casualty claim manager, Larry Poynter, had violated W. Va.Code § 33–11–4(9) (1985) (Repl.Vol. 2000)[2] of the West Virginia Unfair Trade Practices Act. In the course of such litigation, Ms. Falls sought various documents that had been authored by Allstate's in-house and defense counsel. Allstate objected to the disclosure of these documents claiming that they were protected by the attorney-client privilege and the work product doctrine. By order entered November 14, 2001, Judge Madden determined that the requested documents were not so protected because the attorney-client privilege and the work product doctrine do not protect an insurer's files and personnel in a first-party bad faith action. In the alternative, the court found that Allstate had not provided evidence sufficient to establish the protections' applicability. As a result of this ruling, the circuit court required Allstate to tender the requested documents to Ms. Falls. Allstate sought a writ of prohibition to prevent Judge Madden from enforcing this order, but the writ was refused.

After the disclosure of these documents, Ms. Falls sought to depose the attorney authors of said documents, to which Allstate objected based upon the fact that those counsel had not participated in Ms. Falls' claim for underinsured motorist benefits. Allstate then moved for a protective order to preclude the depositions of these individuals, which motion was denied by order entered April 15, 2003. In so ruling, the circuit court determined that the communications would not be privileged insofar as they concerned matters of fact rather than opinion.

Following these adverse rulings of the circuit court, Allstate petitioned this Court for a writ of prohibition to prevent Judge Madden from enforcing his orders requiring Allstate to tender the allegedly privileged documents and permitting Ms. Falls to depose the authors thereof. By order entered June 17, 2003, we directed the circuit court to "conduct[ ] such proceedings and analysis as set forth in this Court's opinion in *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 583 S.E.2d 80 (2003)." Upon the conclusion of these proceedings, Judge Madden, by order entered September 8, 2003, concluded that "Allstate is not able to demonstrate to this Court that the elements establishing the attorney-client privilege or work product exception have been established." Having not been mooted by Judge Madden's final consideration of the matter, we proceed to consider Allstate's request for prohibitory relief.

**2.** W. Va.Code § 33–11–4(9) (1985) (Repl.Vol. 2000) sets forth the prohibited conduct that constitutes "[u]nfair claim settlement practices". Although this statute has been modified since the initiation of the bad faith litigation underlying the present proceeding, such amendments do not affect our decision of this case. *Compare* W. Va.Code § 33–11–4(9) (2002) (Repl.Vol.2003) *with* W. Va.Code § 33–11–4(9) (1985) (Repl.Vol. 2000).

## II.

### STANDARD FOR ISSUANCE OF WRIT

■ The question presented by this petition is whether Allstate is entitled to the writ of prohibition it requests. When determining whether a writ of prohibition should issue, we consider the following factors:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). *Accord* Syl. pt. 1, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979).

■ Of particular relevance to cases concerning discovery matters, such as the case presently before us, we additionally have held that

> " '[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders.' Syllabus Point 1, *State Farm Mutual Automobile Insurance Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992)." Syllabus Point 3, *State ex rel. McCormick v. Zakaib*, 189 W.Va. 258, 430 S.E.2d 316 (1993).

Syl. pt. 2, *State ex rel. United States Fid. & Guar. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995). Thus, where, as here, the party seeking the issuance of a prohibitory writ complains that the circuit court's ruling will require the disclosure of allegedly privileged materials, it is proper for this Court to entertain the petition. "When a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syl. pt. 3, *U.S.F. & G.*, 194 W.Va. 431, 460 S.E.2d 677. Mindful of these standards, we proceed to consider the parties' arguments.

### III.

### DISCUSSION

The sole issue presented in this case for resolution by the Court is whether, or to what degree are, documents protected from disclosure and individuals insulated from providing testimony when a party in a first-party bad faith action asserts that the documents and/or individuals are protected from discovery by the attorney-client privilege and/or the work product doctrine. In short, the circuit court found the attorney-client privilege and the work product doctrine to be inapplicable to first-party bad faith cases and, even if they did apply, Allstate had failed to establish the requisite elements for either protection. Before this Court, Allstate argues that the circuit court erred by finding the privileges to be inapplicable. Ms. Falls contends that the circuit court correctly ruled and that if the privileges are found to apply, the crime-fraud exception operates to compel disclosure of the requested communications. Prior to addressing the specific queries presented in this case, however, we find it instructive to review our prior cases discussing the requisite components of the asserted privileges and the exceptions applicable thereto.

#### A. Attorney–Client Privilege

■ Generally speaking, the discovery process allows litigants to obtain materials that are critical to the proof of their case.

As such, materials that are relevant and probative to the asserted claim, or any defenses thereto, usually are discoverable.

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

W. Va. R. Civ. P. 26(b)(1). Material can be excluded from discovery, however, where the discovery request is unduly burdensome.

"Where a claim is made that a discovery request is unduly burdensome under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, the trial court should consider several factors. First, a court should weigh the requesting party's need to obtain the information against the burden that producing the information places on the opposing party. This requires an analysis of the issues in the case, the amount in controversy, and the resources of the parties. Secondly, the opposing party has the obligation to show why the discovery is burdensome unless, in light of the issues, the discovery request is oppressive on its face. Finally, the court must consider the relevancy and materiality of the information sought." Syl. pt. 3, *State Farm Mutual Automobile Insurance Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992).

Syl. pt. 5, *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75

(1998). Additionally, in order to protect the sanctity of certain relationships, precise exceptions have been established to limit or prohibit access to evidence generated in the course of said communications. To this end, we have held that

[i]n clear language, Rule 26 of the West Virginia Rules of Civil Procedure provides that privileged matters, although relevant, are not discoverable. As a result of this rule, many documents that could very substantially aid a litigant in a lawsuit are neither discoverable nor admissible as evidence. In determining what privileges or protections are applicable, we are obligated to look both at the rules themselves and to our statutory and common law.

Syl. pt. 12, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003). One of the special relationships to which these privileges apply, which is at issue in the case *sub judice*, is the attorney-client relationship.[3]

The attorney-client privilege was developed as a means of protecting the confidential relationship shared between a client and his/her counsel. "Originating at common law, the attorney-client privilege 'has as its principal object the promotion of full and frank discourse between attorney and client so as to insure sound legal advice or advocacy.'" *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W.Va. 316, 326, 484 S.E.2d 199, 209 (1997) (quoting Syl. pt. 11, in part, *Marano v. Holland*, 179 W.Va. 156, 366 S.E.2d 117 (1988)) (additional citation omitted). To shield evidence from disclosure based upon this privilege, certain enumerated criteria must be satisfied.

"In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his

---

3. Other types of relationship-based privileges protecting confidential communications include the spousal privilege and the priest-penitent privilege. *See, e.g.,* W. Va.Code § 57–3–4 (1923) (Repl.Vol.1997) (deeming confidential communications between husband and wife); W. Va.Code § 57–3–9 (2001) (Supp.2003) (protecting communications with religious counselors in their professional capacity); *State v. Bohon*, 211 W.Va. 277, 565 S.E.2d 399 (2002) (discussing "marital confidence privilege"); *State v. Potter*, 197 W.Va. 734, 478 S.E.2d 742 (1996) (considering "clergy-communicant privilege").

capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential." Syllabus Point 2, *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979).

Syl. pt. 7, *United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677. However, "[a] party may waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue." Syl. pt. 8, *United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677.

██ Although the attorney-client privilege historically belongs to the client, *State ex rel. Allstate Insurance Co. v. Gaughan,* 203 W.Va. at 372 n. 21, 508 S.E.2d at 89 n. 21, the dynamics of the attorney-client relationship in suits alleging bad faith[4] has prompted the recognition of situations in which the insurer may nevertheless assert entitlement to the privilege despite the fact that it provided counsel for its insured in the underlying coverage litigation. With specific regard to first-party bad faith actions[5] resulting from the insurer's denial of coverage,[6] such as the case *sub judice,* we have held

[w]here the interests of an insured and his or her insurance company are in conflict with regard to a claim for underinsured motorist coverage and the insurance company is represented by counsel, the bringing of a related first-party bad faith action by the insured does not automatically result in a waiver of the insurance com-

pany's attorney-client privilege concerning the underinsurance claim.

Syl. pt. 7, *State ex rel. Brison v. Kaufman,* 213 W.Va. 624, 584 S.E.2d 480 (2003). *Cf. Medical Assurance,* 213 W.Va. at 470 & n. 12, 583 S.E.2d at 93 & n. 12 (discussing attorney-client privilege of insured in first-party bad faith action (citation omitted)). Thus, while the insured may effectuate a waiver of the privilege in the bad faith action by placing into issue the advice of his or her insurer-provided counsel in the underlying coverage litigation, *see* Syl. pt. 8, *United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677, the insurer may nevertheless rely upon the privilege to shield evidence from disclosure if it can establish the satisfaction of the privilege's requisite elements, *see* Syl. pt. 7, *id.* In the case *sub judice,* to the extent the trial judge found that the bringing of a first-party bad faith action automatically results in a waiver of the attorney-client privilege, that ruling was error.

### B. Work Product Doctrine

If the materials sought to be protected from disclosure do not satisfy the criteria necessary for the assertion of the attorney-client privilege, they nonetheless may be insulated from discovery by resort to the work product doctrine. *See* W. Va. R. Civ. P. 26(b)(3); *Brison,* 213 W.Va. at 633, 584 S.E.2d at 489; *Medical Assurance,* 213 W.Va. at 466, 583 S.E.2d at 89; *U.S.F. & G.,* 194 W.Va. at 444, 460 S.E.2d at 690. This

---

**4.** In *State ex rel. Allstate Insurance Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75 (1998), we differentiated between "first-party" and "third-party" bad faith actions.

[A] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor. In the bad faith action against the insurance company the third-party alleges the insurer insurance company engaged in bad faith settlement in the first action against the insured tortfeasor.

*Id.,* 203 W.Va. at 369–70, 508 S.E.2d at 86–87 (footnotes and citation omitted).

**5.** For a discussion of the availability and application of the attorney-client privilege in third-party

bad faith cases, see Syl. pts. 7–10, *State ex rel. Allstate Insurance Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75.

**6.** In the concurrence to *Brison,* a distinction was made between first-party bad faith actions arising from claims of loss versus those resulting from excess judgments having been entered against the insured. *See State ex rel. Brison v. Kaufman,* 213 W.Va. 624, 634–36, 584 S.E.2d 480, 490–92 (2003) (Davis, J., concurring). Because the instant proceeding involves the aforementioned "loss claim" type of first-party bad faith action, and because that was the type of litigation upon which the holdings of *Brison* were based, we do not herein address the availability of the attorney-client privilege in "excess judgment" first-party bad faith cases.

evidentiary rule protects from disclosure materials generated by an attorney in the course of, or in preparation for, litigation. "The work product doctrine in West Virginia, which historically protects against disclosure of the fruits of an attorney's labor, is necessary to prevent one attorney from invading the files of another attorney." *U.S.F. & G.,* 194 W.Va. at 444, 460 S.E.2d at 690. Rule 26(b)(3) of the West Virginia Rules of Civil Procedure defines the scope of this doctrine, in pertinent part,

[s]ubject to the provisions of subdivision (b)(4) [7] of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) *only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.* In ordering the discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation . . . .*

(Footnote and emphasis added). We previously have interpreted this rule as meaning " '[t]he limitation in Rule 26(b)(3) of the West Virginia Rules of Civil Procedure is against obtaining documents and other tangible things used in trial preparation.' Syllabus Point 8, in part, *In re Markle,* 174 W.Va. 550, 328 S.E.2d 157 (1984)." Syl. pt. 8, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 583 S.E.2d 80. Therefore, insofar as materials are otherwise discoverable under Rule 26(b)(1), *i.e.,* not privileged, they still may be protected from

discovery if they fall within the confines of the work product rule. *See Medical Assurance,* 213 W.Va. at 466–67, 583 S.E.2d at 89–90.

■ " '[T]he literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation.' " *U.S.F. & G.,* 194 W.Va. at 445, 460 S.E.2d at 691 (quoting *Federal Trade Comm'n v. Grolier Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387, 393 (1983) (emphasis in original) (citation omitted)). Thus,

"[t]o determine whether a document was prepared in anticipation of litigation and, is therefore, protected from disclosure under the work product doctrine, the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation." Syllabus Point 7, *State ex rel. United Hosp. [Ctr., Inc.] v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 (1997).

Syl. pt. 9, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 583 S.E.2d 80.

■ Unlike the attorney-client privilege, however, the protections afforded by the work product rule are provided solely for the attorney who authored the materials sought. *Gaughan,* 203 W.Va. at 375 n. 33, 508 S.E.2d at 92 n. 33 (citation omitted). In other words, "the attorney has the exclusive authority to invoke the work product rule." *Id.*

Where the work product exception is asserted, a circuit court must consider that the protection stemming from this privilege belongs to the professional, rather than the client, and that efforts to obtain disclosure of opinion work product should be evaluated with particular care.

Syl. pt. 9, *United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677.

Less formally defined, however, is the availability of the work product doctrine in first-party bad faith cases.[8] In *Brison* and

---

7. Rule 26(b)(4) of the West Virginia Rules of Civil Procedure addresses discovery of experts and trial preparation.

8. For a discussion of the availability and application of the work product doctrine in third-party bad faith cases, see Syl. pts. 11–13, *State ex rel. Allstate Insurance Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75.

*Medical Assurance,* we acknowledged that the work product doctrine had application in those first-party actions. *Brison,* 213 W.Va. at 633, 584 S.E.2d at 489; *Medical Assurance,* 213 W.Va. at 467, 583 S.E.2d at 90. Furthermore, in the context of third-party bad faith cases, we recognized, in *Gaughan,* that the authority to invoke this doctrine rests "with the insurer." *Gaughan,* 203 W.Va. at 375 n. 33, 508 S.E.2d at 92 n. 33. Beyond these fleeting references, however, we have yet to establish definitive guidance as to the doctrine's availability in first-party cases.

■ As was the case in *Brison,* the circuit court in the instant proceeding did not conduct a detailed examination to determine whether, in fact, the requirements of the work product doctrine had been satisfied. Rather, the circuit court's determination that the doctrine was inapplicable stemmed more from the fact that the proceeding was a first-party bad faith action to which, in the court's opinion, the work product doctrine did not apply. For the same reasons we clarified the availability of the attorney-client privilege in bad faith actions, we do likewise herein with respect to the work product doctrine. Accordingly, we hold that where the interests of an insured and his or her insurance company are in conflict with regard to a claim for underinsured motorist coverage and the insurance company is represented by counsel, the bringing of a related first-party bad faith action by the insured does not automatically preclude the insurance company from raising the work product doctrine as a defense to discovery concerning the underinsurance claim.

■ That is not to say, however, that an insurer may automatically protect from discovery the entire contents of an insured's claim file, or even a portion thereof, by asserting the work product doctrine.

The work product doctrine differs from attorney-client privilege in that work product protections are not absolute. "While the work product doctrine creates a form of qualified immunity from discovery, it does not label protected material as 'privileged' and thus outside the scope of discovery under Rule 26(b)(1), *W.V.R.C.P.*" *State ex rel. Chaparro v. Wilkes,* 190 W.Va. 395, 397, 438 S.E.2d 575, 577 (1993).

*Medical Assurance,* 213 W.Va. at 466–67, 583 S.E.2d at 89–90. Rather, the extent of the doctrine's applicability in a given case will depend upon the satisfaction of the elements necessary to establish entitlement to its protections.[9]

### C. Crime–Fraud Exception

■ Once the attorney-client privilege or the work product doctrine has been found to apply to insulate communications from discovery, the protections afforded thereby nevertheless may be overcome through application of the crime-fraud exception. In short, the crime-fraud exception operates to remove the privilege attaching to communications between a client and his or her counsel that were made in furtherance of a fraudulent or criminal scheme. *See generally United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 472, 583 S.E.2d 80, 95 (2003) (Davis, J., concurring). Although the exception historically applied only to obviate the attorney-client privilege, current jurisprudence has also found it to nullify the protections afforded by the work product doctrine. *See Medical Assurance,* 213 W.Va. at 472, 583 S.E.2d at 95 (Davis, J., concurring) (" 'One of the more important exceptions to the attorney-client privilege is the "crime-fraud" exception.' " (quoting *Grassmueck v.*

---

**9.** The level of protection afforded by the work product doctrine in a given case also depends upon whether the work product at issue is based upon fact or opinion. *See* Syl. pt. 10, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 583 S.E.2d 80 (2003) (" 'Rule 26(b)(3) of the West Virginia Rules of Civil Procedure makes a distinction between factual and opinion work product with regard to the level of necessity that has to be shown to obtain their discovery.' Syllabus Point 7, *In re Markle,* 174 W.Va. 550, 328 S.E.2d 157 (1984)."). As the differentiation between these two types of work product has not been placed in issue in this proceeding, we will not make such a distinction herein, but will reserve such a discussion for a more factually appropriate case.

*Ogden Murphy Wallace, P.L.L.C.,* 213 F.R.D. 567, 572 (W.D.Wash.2003))).[10]

While the crime-fraud exception is widely recognized, much confusion has persisted as to its precise application. *See Medical Assurance,* 213 W.Va. at 474, 583 S.E.2d at 97 (Davis, J., concurring) (commenting on the lack of uniformity among courts that have addressed the application of the crime-fraud exception). Compounding this uncertainty are the recent decisions of this Court extending application of the attorney-client privilege and the work product doctrine to first- and third-party bad faith cases. *See, e.g.,* Syl. pt. 7, *State ex rel. Brison v. Kaufman,* 213 W.Va. 624, 584 S.E.2d 480; Syl. pts. 7–10 & 11–13, *State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75. Given that this exception operates to overcome these privileges and to render discoverable evidence that would otherwise be protected from disclosure, it stands to reason that the crime-fraud exception will be asserted with increasingly more fervor in cases such as the one presently under consideration. *See Medical Assurance,* 213 W.Va. at 472, 583 S.E.2d at 95 (Davis, J., concurring) (surmising that "the crime-fraud exception will, in fact, be a recurring matter in insurance bad faith claims"). In an attempt to provide guidance as to the requisite elements and application of the crime-fraud exception in bad faith cases, then, we undertake the following analysis. ·

The crime-fraud exception has long been recognized as a means to overcome the privilege ordinarily afforded to communications between a client and his or her counsel when such communications have been made in furtherance of the commission of a crime or fraud. "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' … between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d

469, 485 (1989) (citations omitted). In the context of

> "the crime/fraud exception to the lawyer-client privilege, 'fraud' would include the commission and/or attempted commission of fraud on the court or on a third person, as well as common law fraud and criminal fraud. The crime/fraud exception comes into play when a prospective client seeks the assistance of an attorney in order to make a false statement or statements of material fact or law to a third person or the court for personal advantage."

*Medical Assurance,* 213 W.Va. at 473, 583 S.E.2d at 96 (Davis, J., concurring) (quoting *Volcanic Gardens Mgmt. Co., Inc. v. Paxson,* 847 S.W.2d 343, 348 (Tex.Ct.App.1993)). *See also* Syl. pt. 2, *Thomas v. Jones,* 105 W.Va. 46, 141 S.E. 434 (1928) ("In order to admit in evidence confidential communications between attorney and client under the exception to the general rule that if such communications were made in order to perpetrate a fraud on justice they are not privileged, it must clearly appear that such communications were made by the client with that intent and purpose.").

Moreover, for the exception to be operable, the fraud or crime contemplated need not have been actually committed; the mere intent to perpetrate the wrongdoing will suffice. In other words, " '[t]he client need not succeed in committing the intended crime or fraud in order to forfeit the attorney-client privilege. The dispositive question is whether the attorney-client communications are part of the client's effort to commit a crime or perpetrate a fraud." ' *Medical Assurance,* 213 W.Va. at 473, 583 S.E.2d at 96 (Davis, J., concurring) (quoting *First Union Nat'l Bank v. Turney,* 824 So.2d 172, 187 (Fla.Dist.Ct.App.2001), *stay denied,* 832 So.2d 768 (Fla.Dist.Ct.App.), *review denied,* 828 So.2d 385 (Fla.2002) (table decision)). Neither must the attorney be aware of his or her client's intention to commit a crime or fraud for the exception to be implicated. "The crime-fraud 'exception applies even if

---

**10.** *See also Medical Assurance,* 213 W.Va. at 472 n. 1, 583 S.E.2d at 95 n. 1 (Davis, J., concurring) (" 'The crime-fraud exception also applies to materials otherwise protected by the work product

doctrine.' " (quoting *In re Grand Jury Investigation,* 437 Mass. 340, 357 n. 28, 772 N.E.2d 9, 21 n. 28 (2002)) (additional citations omitted)).

the attorney is unaware of the client's criminal or fraudulent intent, and applies of course where the attorney knows of the forbidden goal.' " *Medical Assurance,* 213 W.Va. at 473, 583 S.E.2d at 96 (Davis, J., concurring) (quoting *Ocean Spray Cranberries, Inc. v. Holt Cargo Sys., Inc.,* 345 N.J.Super. 515, 522, 785 A.2d 955, 959 (Law Div.2000)) (additional citations omitted).

The elements of the crime-fraud exception, as recognized by the United States Supreme Court in the seminal case of *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), require the party seeking to establish the exception to demonstrate, "through nonprivileged evidence, ' "a factual basis adequate to support a good faith belief by a reasonable person," that *in camera* review of the [privileged] materials may reveal evidence to establish the claim that the crime-fraud exception applies.' " *Medical Assurance,* 213 W.Va. at 475–76, 583 S.E.2d at 98–99 (Davis, J., concurring) (quoting *Zolin,* 491 U.S. at 572, 109 S.Ct. at 2631, 105 L.Ed.2d at 490 (quoting *Caldwell v. District Court,* 644 P.2d 26, 33 (Colo.1982))). In so doing, "the party opposing the privilege may use any nonprivileged evidence in support of its request for *in camera* review[.]" *Zolin,* 491 U.S. at 574, 109 S.Ct. at 2632, 105 L.Ed.2d at 492. However, where a determination of privilege has not yet been made, the party seeking disclosure may also rely on the allegedly privileged materials to establish a *prima facie* showing that the crime-fraud exception applies to compel disclosure. *Id.,* 491 U.S. at 573–74, 109 S.Ct. at 2631–32, 105 L.Ed.2d at 491–92.

Additionally, the decision as to whether an *in camera* review is warranted rests with the court. " '[O]n a showing of a factual basis adequate to support a reasonable belief that an *in camera* review of the evidence may establish that the exception applies, the judge has discretion to conduct such an *in camera* review.' " *Medical Assurance,* 213 W.Va. at 476 n. 8, 583 S.E.2d at 99 n. 8 (Davis, J., concurring) (quoting *Purcell v. District Attorney,* 424 Mass. 109, 113, 676 N.E.2d 436, 439 (1997)) (additional citation omitted). A "court is also free to defer its *in camera* review if it concludes that additional

evidence in support of the crime-fraud exception may be available that is *not* allegedly privileged, and that production of the additional evidence will not unduly disrupt or delay the proceedings." *Zolin,* 491 U.S. at 572, 109 S.Ct. at 2631, 105 L.Ed.2d at 491 (emphasis in original). Nevertheless, "[a]n *in camera* review is not necessary if a party's initial evidence is sufficient to establish the crime-fraud exception." *Medical Assurance,* 213 W.Va. at 476 n. 7, 583 S.E.2d at 99 n. 7 (Davis, J., concurring).

Once a determination has been made to conduct *in camera* proceedings, "the party opposing the privilege may prevail only where the evidence establishes 'that the client intended to perpetrate a [crime or] fraud.' " *Medical Assurance,* 213 W.Va. at 476–77, 583 S.E.2d at 99–100 (Davis, J., concurring) (quoting *Olson v. Accessory Controls & Equip. Corp.,* 254 Conn. 145, 174, 757 A.2d 14, 31 (2000)) (footnote omitted). The evidence proffered by the party seeking disclosure must also permit the court to " 'find a valid relationship between the confidential communication that was made and the crime or fraud.' " *Medical Assurance,* 213 W.Va. at 477, 583 S.E.2d at 100 (Davis, J., concurring) (quoting 1 Franklin D. Cleckley, *Handbook on Evidence* § 5–4(E)(6)(a) (1994)) (footnote omitted).

To facilitate the application of this standard in future cases, we reiterate the tenets of *Zolin* set forth above and hold that to establish the application of the crime-fraud exception, a party must demonstrate an adequate factual basis exists to support a reasonable person's good faith belief that an *in camera* review of the privileged materials would produce evidence to render the exception applicable. In making this *prima facie* showing, the party must rely on nonprivileged evidence, unless the court has not previously made a preliminary determination on the matter of privilege, in which case the allegedly privileged materials may also be considered. Discretion as to whether to conduct an *in camera* review of the privileged materials rests with the court. If, however, the *prima facie* evidence is sufficient to establish the existence of a crime or fraud so as to render the exception operable, the court

need not conduct an *in camera* review of the otherwise privileged materials before finding the exception to apply and requiring disclosure of the previously protected materials. The crime-fraud exception operates to compel disclosure of otherwise privileged materials only when the evidence establishes that the client intended to perpetrate a crime or fraud and that the confidential communications between the attorney and client were made in furtherance of such crime or fraud.

Finally, as we have determined both the attorney-client privilege and the work product doctrine to apply in first-party bad faith actions, we likewise find the crime-fraud exception to be applicable. *See, e.g., Medical Assurance,* 213 W.Va. at 479, 583 S.E.2d at 102 (Davis, J., concurring) ("[A]n 'insurer's allegedly tortious conduct in asserting bad faith defenses against a claim for coverage constitute[s] "civil fraud," and … the attorney-client privilege [will] not protect communications between an attorney and her client relating to that fraud.'" (quoting *Munn v. Bristol Bay Hous. Auth.,* 777 P.2d 188, 195 (Alaska 1989))). Accordingly, we hold that, to the extent the attorney-client privilege and the work product doctrine operate to protect communications between a client and his or her counsel in a first-party bad faith action, the crime-fraud exception also operates to require disclosure of such communications made in furtherance of a crime or fraud. It goes without saying, however, that where no attorney-client privilege or work product doctrine protections exist, the materials allegedly protected thereby are automatically subject to disclosure and the crime-fraud exception would have no application.

### D. Decision

Applying the above-referenced principles of law and rendering our rulings in this case, we note that, due to the measure of protection ordinarily provided by the privileges claimed herein, we duly consider the propriety of the circuit court's order that required disclosure of the allegedly privileged documents and testimony. In this regard, we have held that "[u]nless obviously correct or unreviewably discretionary, rul-

ings requiring attorneys to turn over documents that are presumably prepared for their clients' information and future action are presumptively erroneous." Syl. pt. 6, *State ex rel. United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677. Nevertheless, "[t]he burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." Syl. pt. 4, *id.* That said, we turn to the resolution of the precise controversy before us.

Our recent decision in *State ex rel. Westfield Insurance Co. v. Madden,* 216 W. Va. 16, 602 S.E.2d 459 (No. 31579 Feb. 27, 2004), clarified the procedure to be followed in bad faith cases wherein the discovery of documents is sought and the party holding said documents asserts a privilege in response to the discovery request:

In an action for bad faith against an insurer, the general procedure involved with discovery of documents contained in an insurer's litigation or claim file is as follows: (1) The party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) of the West Virginia Rules of Civil Procedure; (2) If the responding party asserts a privilege to any of the specific documents requested, the responding party shall file a privilege log that identifies the document for which a privilege is claimed by name, date, custodian, source and the basis for the claim of privilege; (3) The privilege log should be provided to the requesting party and the trial court; and (4) If the party seeking documents for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery.

Syl. pt. 2, *State ex rel. Westfield Ins. Co. v. Madden,* 216 W. Va. 16, 602 S.E.2d 459.

Inasmuch as the defenses to discovery disclosure of counsel's testimony are the

same as those pertaining to the documents to which Allstate also maintains privileges and other protections apply, we find that the procedures to be followed vis-a-vis documents apply with equal force to requests for deposition testimony, with the necessary modifications to allow for the distinctions between documentary and testimonial discovery. *See, e.g., Mordesovitch v. Westfield Ins. Co.,* 235 F.Supp.2d 512, 516 (S.D.W.Va.2002) (mem.op.); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578,* 130 F.R.D. 348, 352 (D.N.J.1990); *Ex parte Alfa Mut. Ins. Co.,* 631 So.2d 858, 859–60 (Ala. 1993); *2,022 Ranch, L.L.C. v. Superior Court,* 7 Cal.Rptr.3d 197, 212–13 & 215, 113 Cal.App.4th 1377, 1397 & 1400 (2003); *Aetna Cas. & Sur. Co. v. Superior Court,* 200 Cal. Rptr. 471, 476, 153 Cal.App.3d 467, 476 (1984). Accordingly, we hold that in an action for bad faith against an insurer, the general procedure to be followed to depose attorneys employed by the insurer is as follows: (1) The party desiring to take the deposition(s) must do so in accordance with the mandates of Rule 30 of the West Virginia Rules of Civil Procedure; (2) If the responding party asserts a privilege to any of the questions posed, the responding party must object to such questioning in accordance with the directives of Rule 30(d)(1); and (3) If the party seeking testimony for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an *in camera* proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery.

■ From our review of the proceedings below, it is apparent to this Court that, while an *in camera* review was ostensibly conducted, it was not the meaningful review contemplated by our recent holding in *Westfield.* Moreover, while Allstate purportedly tendered a privilege log to the lower court in an attempt to shield its documents from disclosure, said log did not contain the requisite specificity delineated in *Westfield.* Neither did the circuit court or Allstate follow the procedures herein announced for the taking of depositions, the subjects of which are allegedly protected by the attorney-client privilege or the work product doctrine. Given the chronology of events, however, it is inconceivable that either the circuit court or Allstate could have anticipated or complied with the tenets we so recently have announced.

Accordingly, we grant as moulded the writ of prohibition requested by Allstate, and remand this case for further proceedings before the circuit court. During remand, the circuit court should afford Allstate an opportunity to submit an amended privilege log in conformity with our holding in *Westfield.* Additionally, the circuit court should apply the law announced herein to determine whether the documents and testimony Ms. Falls seeks from Allstate are protected from discovery by the attorney-client privilege or the work product doctrine or whether they are rendered discoverable due to the inapplicability of the aforementioned protections or the destruction of privileged status by the crime-fraud exception. In conducting *in camera* examinations of the purportedly privileged communications, the circuit court may conduct such inquiries itself or may, in the interests of judicial economy, appoint a special master for this purpose. *See State ex rel. Westfield Ins. Co. v. Madden,* 216 W. Va. at 22, 602 S.E.2d at 465, ("[S]hould the court deem it to be more expedient, the court may 'appoint[ ] a special master to review the withheld documents in camera and to determine whether they were exempt from disclosure[.]' " (quoting *Daily Gazette Co., Inc. v. West Virginia Dev. Office,* 198 W.Va. 563, 566, 482 S.E.2d 180, 183 (1996))). Furthermore, to the extent that the circuit court determines the privileges claimed by Allstate to exist as to the documents it earlier disclosed, the court should enter an order precluding Ms. Falls from using such documents in any capacity during this litigation.

Lastly, we wish to caution litigants who raise claims of privilege in response to discovery requests to be scrupulous in their assertions insofar as false claims of privilege are sanctionable under Rule 37 of the West Virginia Rules of Civil Procedure. *See* W. Va. R. Civ. P. 37 (authorizing sanctions for "[f]ailure to cooperate in discovery"). That is not to say that we believe all claims of

privilege are frivolous, nor should this opinion be construed as eroding any of the well-established privileges discussed herein. We simply urge parties to consider whether, in fact, the privileges asserted do in fact, or arguably may, shield their evidence from discovery rather than willy-nilly asserting colorable claims of privilege in response to discovery requests.

## IV.

## CONCLUSION

For the foregoing reasons, we grant as moulded the requested writ of prohibition.

Writ Granted as Moulded.

Justice STARCHER, deeming himself disqualified, did not participate in the decision of this case.

Judge WALKER, sitting by temporary assignment.

Chief Justice MAYNARD concurs and reserves the right to file a concurring opinion.

Justice MCGRAW and Justice ALBRIGHT dissent and reserve the right to file dissenting opinions.

ALBRIGHT, Justice, dissenting.

I strongly dissent from both the result reached by the majority and the new points of law set forth in syllabus points seven and eight.[1] The writ of prohibition granted in this cause, coupled with those new syllabus points drawn in a virtual factual vacuum, constitute nothing more than an advisory opinion on the sensitive subject of the attorney-client privilege and its narrowly-tailored crime-fraud exception. Through its opinion, the majority seeks to guarantee that counsel for the plaintiff in substantially every bad-faith insurance action may embark on a fishing expedition during the discovery phase calculated to invade the oldest of all common-law privileges—the attorney-client privilege.[2] Moreover, although the trial court committed error in holding that the attorney-client privilege did not apply in first-party insurance bad-faith cases, that error was not prejudicial because the trial judge fully complied with our instructions to follow the tests previously discussed in *State ex rel. Medical Assurance v. Honorable Arthur M. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003), for the purpose of identifying whether the attorney-client privilege applies. Upon application of those enunciated standards, the trial court determined that the disputed documents were subject to discovery, given the failure of the defendant to establish the necessary grounds for their exclusion.

Because the majority chose to address these issues involving the venerated attorney-client privilege upon a severely limited record given the matter's presentation on

---

1. In syllabus points seven and eight, the majority holds as follows:

 To establish the application of the crime-fraud exception, a party must demonstrate an adequate factual basis exists to support a reasonable person's good faith belief that an *in camera* review of the privileged materials would produce evidence to render the exception applicable. In making this *prima facie* showing, the party must rely on nonprivileged evidence, unless the court has not previously made a preliminary determination on the matter of privilege, in which case the allegedly privileged materials may also be considered. Discretion as to whether to conduct an *in camera* review of the privileged materials rests with the court. If, however, the *prima facie* evidence is sufficient to establish the existence of a crime or fraud so as to render the exception operable, the court need not conduct an *in camera* review of the otherwise privileged materials before finding the exception to apply and requiring disclosure of the previously pro-

tected materials. The crime-fraud exception operates to compel disclosure of otherwise privileged materials only when the evidence establishes that the client intended to perpetrate a crime or fraud and that the confidential communications between the attorney and client were made in furtherance of such crime or fraud.

 To the extent the attorney-client privilege and the work product doctrine operate to protect communications between a client and his or her counsel in a first-party bad-faith action, the crime-fraud exception also operates to require disclosure of such communications made in furtherance of a crime or fraud.

2. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (stating that attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law").

application for a writ of prohibition, I fully anticipate the result of this impolitic course of action will be protracted litigation for the purpose of testing the limits and probing the ambiguities which continue to surface due to the abstract and confusing rules that the majority sets forth to justify its invasion of the privilege. The majority unwisely and unnecessarily injects this Court into the thicket of unresolved questions that surrounds application of the crime-fraud exception. Critically, the new syllabus points, while clearly fashioned to echo the holdings in *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), fail to address the lingering unanswered issues involving *Zolin's* application that authorities have repeatedly identified. Furthermore, the majority wrongly attempts to announce new legal standards without having either a complete record or full briefing and argument on the issues—items which should always attend both our deliberations and our legal pronouncements on weighty issues such as those improvidently addressed by the majority.

### Interlocutory Nature of Proceeding

As an initial matter, I object to the action of the majority because the challenged trial court ruling is contained in an interlocutory order issued in conjunction with the discovery stage of the proceeding below and also because of the extraordinary nature of the relief sought from this Court. *See State ex rel. Charles Town General Hosp. v. Sanders,* 210 W.Va. 118, 122–23, 556 S.E.2d 85, 89–90 (2001) (recognizing that "relief of this nature is reserved for rather extraordinary cases" and stating that "we employ a detailed analysis of various criteria" "when deciding whether prohibitory relief is appropriate"). While purportedly relying upon the exception we carved to this general rule of not reviewing discovery matters by means of a writ of prohibition, *State ex rel. USF & G Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995), the majority does not cite any evidence that the discovery rulings at issue

made by Judge Madden "involve[d] the *probable* invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3)." *Id.* at 437, 460 S.E.2d at 683 (footnotes omitted and emphasis supplied). Instead, exactly the opposite appears from the limited record before us. The trial judge was fully justified in finding that the parties opposing disclosure of the documents at issue here failed in their duty to establish a legitimate basis for withholding those papers. Consequently, I am concerned that this Court has chosen to embark down a path of crafting advisory opinions in extraordinary proceedings where the evidence does not justify an intrusion into the non-final rulings of the case below and the limited record before the Court was completely devoid of prejudicial error.

If the majority had before it a record justifying this Court's issuance of a writ of prohibition solely to direct the trial court not to enforce a discovery order based on an erroneous legal ruling, a writ of prohibition might have properly issued under the standard established in *Canady,* assuming a proper showing of "probable invasion of confidential materials." *Ibid.* However, as noted, the trial court found that the defendants below failed to carry their burden under this Court's rulings in *Medical Assurance* and, consequently, this Court had no basis from which to conclude that ruling was issued in error.

### Issues Not Before This Court

Although the majority acknowledges that the crime-fraud exception to the attorney-client privilege was never raised below,[3] the majority opportunistically used this case as a means for creating new law. While advisory opinions and rulings are never the preferred method of establishing law, utilizing an extraordinary proceeding for the purpose of adopting new law, especially when the legal basis for such law was not presented in the case at bar, compounds the error. Given the context under which the majority adopted

---

3. The reason it was not raised below was because the lower court ruled that the attorney-client privilege was inapplicable. Consequently, there was no basis for addressing an exception to the privilege at the trial court level. On appeal, the plaintiff below asserts that if the attorney-client privilege were found to be applicable, the requested discovery materials would still be subject to disclosure based on the crime-fraud exception.

the crime-fraud exception, it is fair to characterize the majority's rulings as constituting both undue judicial activism and an abuse of judicial power.

### Distinctions Between Bad–Faith Insurance Claims and Civil Fraud

Besides the complete procedural impropriety of delving into a new area of law absent a proper foundation, there are serious flaws in the majority's wholesale adoption of the crime-fraud exception, given the numerous parameters involving this exception and, in particular, its questionable applicability to bad-faith insurance suits.[4] The most significant and troubling flaw that the majority seems to have overlooked is that bad faith and civil fraud are not synonymous legal concepts. Because the crime-fraud exception to the attorney-client privilege was specifically created for the purpose of not allowing individuals to involve or utilize the services of an attorney for the furtherance of a fraud or crime,[5] it does not follow that bad faith, with its distinguishable elements of proof, would squarely fall within the category of legal offenses contemplated by the exception.

In explanation of why bad-faith claims are not routinely encompassed within the crime-fraud exception, one commentator has observed:

> The attorney-client privilege is obviously one of the most guarded rights that a litigant is afforded. Due to the importance of this privilege, courts have recognized rare limited exceptions to the privilege. One of those exceptions that policyholders' counsel have recently resorted to in support of a litigation bad faith theory is the "crime-fraud" exception. The crime-fraud exception exists because the very purpose of the attorney-client privilege would be abrogated by allowing attorneys and their clients to use the privilege to conceal evidence of fraud or to protect communications that are part of a criminal activity.
>
> Not surprisingly, courts are reluctant to pierce the attorney-client privilege based on this exception. For the crime-fraud exception to apply, the proponent carries a high burden of establishing that the fraud was ongoing or occurred at or during the time that the documents were prepared, and that legal services were obtained in order to plan or commit a fraud. The majority of courts that have entertained an insured's argument that the attorney-client privilege can be abrogated by the filing of a bad faith claim, however, have refused to equate a bad faith cause of action with civil fraud. Such courts view civil fraud as a discrete cause of action distinct from bad faith and requiring different elements of proof.

Edward Zampino and M. Jarrett Coleman, *Turning the Other Cheek: Can Insurers' Defense of Coverage Suits Constitute Grounds for Bad Faith Litigation*, 38 Tort Trial & Ins. Practice Law J. 103 (Fall 2002) (footnotes omitted).

---

4. While the majority indirectly asserts by means of recurring references to its eponymous concurrence in *Medical Assurance* that bad-faith insurance actions can and properly do fall under the civil fraud umbrella, the majority of this Court arguably took the exact opposite position in *Medical Assurance. See* 213 W.Va. at 470, 583 S.E.2d at 93 (stating that "[t]his Court concurs with the reasoning of the Montana court" in rejecting discoverability of insurance company's files in bad-faith actions) (citing *State ex rel. USF & G v. Montana Second Judicial District Court*, 240 Mont. 5, 783 P.2d 911, 915–16). Given the clear position of this Court in *Medical Assurance*, conjoined with Justice Davis's unmistakably clear position in her concurrence to that case in favor of extending the applicability of the crime-fraud exception to bad-faith insurance cases (announced under cover of her statement that she " 'agree[d] entirely with Justice [Maynard's] analysis of the legal issues presented [t]here and with his application of them to the facts of th[at] case' "), it can only be said that the adoption of the crime-fraud exception in the manner undertaken by the majority in this case effectively "gets around" this Court's concerted effort not to expressly adopt such law in *Medical Assurance*. 213 W.Va. at 472, 583 S.E.2d at 95. The majority has clearly "made law," law expressly contrary to the positions adopted by this Court in *Medical Assurance* barely one year ago.

5. *See U.S. v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (stating that "the purpose of the crime-fraud exception to the attorney-client privilege [is] to assure that the 'seal of secrecy,' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime") (citing *O'Rourke v. Darbishire*, [1920] A.C. 581, 604 (P.C.))

Yet another explanation of why bad-faith claims cannot be categorically lumped into the crime-fraud exception was offered by three Ohio jurists:

> [B]ad faith by an insurer is conceptually different from fraud. Bad-faith denial of insurance coverage means merely that the insurer lacked a "reasonable justification" for denying a claim. In contrast, an actionable claim of fraud requires proof of a false statement made with intent to mislead. Proof of an insurer's bad faith in denying coverage does not require proof of any false or misleading statements; an insurer could, for example, act in bad faith by denying coverage without explanation. Because bad faith is not inherently similar to fraud, there is no reason why an allegation of bad faith should result in an exception to the attorney-client privilege akin to the crime-fraud exception.

*Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 744 N.E.2d 154, 160 (2001) (Moyer, C.J., Cook, Lundberg Stratton, J.J., dissenting) (citations omitted).

In finding an opinion letter written by counsel for the insurer non-discoverable under the attorney-client privilege, the Kentucky Supreme Court concluded that the document was privileged "in the absence of any evidence indicating the contemplation of a tortious act on behalf of [the insurance company.]" *Guaranty Nat'l Ins. Co. v. George*, 953 S.W.2d 946, 948 (Ky.1997). The court further opined: "To develop an exception in bad-faith cases against insurers would impede the free flow of information and honest evaluation of claims. In the absence of fraud or criminal activity, an insurer is entitled to the attorney-client privilege to the same extent as other litigants." *Id.* at 948; *see also State ex rel. U.S.F. & G. Co. v. Montana Second Jud. Dist. Ct.*, 240 Mont. 5, 783 P.2d

911, 916 (1989) (observing that "[a]n insurance company must have an honest and candid evaluation of the case, possibly including a 'worse case scenario'" and that "concern[s] by the attorney that communications would be discoverable in a [third-party] bad faith suit would certainly chill open and honest communication ... [and] impede settlements").

### Likely Result of Majority's Opinion

The majority does not expressly take the position that evidence of bad faith is the equivalent of civil fraud for purposes of defeating the attorney-client privilege. *But see Medical Assurance*, 213 W.Va. at 478–79, 583 S.E.2d at 101–02 (Davis, J., concurring). However, by adopting legal standards for the invasion of the attorney-client privilege under the crime-fraud exception without reference to specific facts, the majority has opened the door for any practicing lawyer to make that assertion. As the Kentucky Supreme Court demonstrated by its choice of words in *Guaranty National Insurance Co.*, it is a short leap from the initial concepts embodied in the crime-fraud exception—of the actual commission of a crime or actually perpetrating a fraud—to *"any evidence indicating the contemplation of a tortious act."* 953 S.W.2d at 948 (emphasis supplied).[6] By suggesting or leaving open the possibility that something less than actual civil fraud is sufficient to invoke the crime-fraud exception, the majority, through its inexact and incomplete articulation of the standard to be applied, has performed a great disservice to the bar and to the citizens of this state. Moreover, by ruling in the absence of a specific factual scenario which would permit application via paradigm of the conceptually involved two-stage test the majority adopts for applying the crime-fraud exception,[7] the

**6.** Under modern insurance law, bad faith in the resolution of an insurance claim is recognized as tortious in nature. *See Poling v. Motorists Mut. Ins. Co.*, 192 W.Va. 46, 450 S.E.2d 635 (1994).

**7.** Pursuant to the crime-fraud exception standard that the majority adopts, there must first be a *prima facie* showing which demonstrates an "adequate factual basis" "to support a reasonable person's good faith belief that an *in camera* review of the privileged materials would produce

evidence to render the exception applicable." *Allstate*, 215 W.Va. 705, 601 S.E.2d 25, No. 31392 (filed May 18, 2004), Syl. Pt. 7, in part. Provided there has not been a previous ruling in the case declaring specific evidence sought to be introduced at the threshold hearing to be subject to the attorney-client privilege, all relevant and lawfully obtained evidence is admissible to demonstrate the requirements of the *prima facie* showing. Following this threshold or *prima facie* hearing, provided that the trial court exercises its discretion to hold an *in camera* hearing or

lawyers of this state are guaranteed to be advocating conflicting positions for years to come, all at the expense of the very citizens the court system is designed to serve.

## Real and Present Danger of Weakened Privilege

There is real cause for concern that the courts—including the majority of this Court—are unwittingly assisting in the weakening of a venerated privilege. As the Second Circuit astutely observed, "[g]iven that the attorney-client privilege and work product immunity play a critical role in our judicial system, the limited exceptions to them should not be framed so broadly as to vitiate much of the protection they afford." *In Re Roe, Inc.,* 168 F.3d 69, 71 (2nd Cir.1999) (citations omitted). Somewhere along the way, the majority appears to have lost sight of the fact that the " 'crime-fraud exception' is narrow and comes into play only when the attorney-client relation is abused such that the benefits of client candor with a legal advisor are outweighed." H. Lowell Brown, *The Crime–Fraud Exception to the Attorney–Client Privilege in the Context of Corporate Counseling,* 87 Ky. L.J. 1191, 1243 (1998–1999); *see also In re Sealed Case,* 754 F.2d 395, 399 (D.C.Cir.1985) (holding that proponents of crime-fraud exception must demonstrate that crime or fraud was committed which was "sufficiently serious to defeat the [attorney-client] privilege"). What this should mean is that each document that exists in an insurance file, or any other case file, is not subject to the exception just because the document may help prove that a fraud occurred. *See Pritchard–Keang Nam Corp. v. Jaworski,* 751 F.2d 277, 283 (8thCir.1984) ("That the report may help *prove* that a fraud occurred does not mean that it was *used* in perpetrating the fraud.")

(emphasis in original). As Judge Ginsberg explained in *U.S. v. White,* 887 F.2d 267 (D.C.Cir.1989):

> The crime-fraud exception has a precise focus: It applies only when the communications between the client and his lawyer further a crime, fraud or other misconduct. It does not suffice that the communications may be related to a crime. To subject the attorney-client communications to disclosure, they must actually have been made with an intent to further an unlawful act.

*Id.* at 271; *accord In Re Roe,* 168 F.3d at 71–72 (rejecting application of crime-fraud exception on grounds that documents at issue were not shown to have been " 'in furtherance of a fraud' "). This significant limitation on the crime-fraud exception bears emphasis in light of the fact that there appears to be a concerted and orchestrated attempt underway to use the crime-fraud exception to gain access to the insurance claims file [8] or what is referred to by lawyers involved in bad-faith litigation as the "ticket to the gold mine." James R. Jebo, *Overcoming Attorney–Client Privilege and Work Product Protection in Bad–Faith Cases,* 70 Defense Counsel J. 261, 264 (April 2003). And this increase in attempts at using the crime-fraud exception as a means of gaining access to case files has imposed a substantial burden on trial judges who must conduct lengthy and time-consuming *in camera* inspections of documents to resolve these issues. *See Clausen v. Nat'l Grange Mut. Ins. Co.,* 730 A.2d 133, 142 (Del.Super.1997) (recognizing substantial burden of *in camera* inspections on trial judges and commenting "it is difficult for a Judge to interrupt the norm of a trial day and quickly digest the complexity of the factual issues of a significant document produc-

has not determined that such a hearing is unnecessary due to the establishment of a crime or fraud at the threshold hearing, an *in camera* review of the subject documents is the focus of the second stage of the process. The only guidance the majority provides to trial courts for this stage is that the party seeking to defeat application of the attorney-client privilege must introduce evidence establishing " 'that the client intended to perpetrate a [crime or] fraud' " and that the trial court must " ' "find a valid relationship between the confidential communication that was made and the crime or fraud." ' " *Id.* at

718, 601 S.E.2d at 38 (quoting *Medical Assurance,* 213 W.Va. at 477, 583 S.E.2d at 100) (quoting 1 Franklin D. Cleckley, *Handbook on Evidence* § 5–4(E)(6)(a) (1994)).

8. While we refer to insurance cases given the factual underpinnings of this case, the rulings of the majority clearly extend to and will impact upon every type of business transaction wherein allegations of fraud or other crimes may at some point be raised in response to an assertion of the attorney-client privilege.

tion case in the context of a claim of privilege").

The United States Supreme Court cautioned in *Zolin* that "[t]here is no reason to permit opponents of the [attorney-client] privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." 491 U.S. at 571, 109 S.Ct. 2619. The high court was concerned that absent a necessary threshold showing of an adequate factual basis suggesting applicability of the crime-fraud exception numerous unwarranted *in camera* hearings might be forced upon the trial courts. *Id.* Since *Zolin*, scholars, jurists, and practitioners have all recognized the heavy burdens that *in camera* proceedings impose upon the trial courts and have further identified a marked divergence among the courts on critical evidentiary issues involved in applying the crime-fraud exception.[9] Consequently, it appears that rather than adopting a standard that will assist courts and lawyers with application of this significant and troublesome standard, the majority has just launched this state into the murky waters in which other jurisdictions have been floundering for quite some time. Without a truly workable standard for application of the crime-fraud exception—one that has been carefully thought out and one that permits both expeditious and uniform application in the full panoply of cases typically brought before our state courts, our courts may soon find themselves unwittingly assisting in fishing expeditions while simultaneously aiding in unintended eviscerations of both the attorney-client privilege and the work-product

doctrine. The majority's opinion, given its attempt to fashion law out of sack cloth, was imprudent and will surely result in protracted litigation as both attorneys and jurists alike attempt to make sense out of the amorphous procedural morass that the majority announced amidst a dearth of factual underpinnings from which to evaluate application of the purely, hypothetical standards. Rather than achieving final resolution, the majority's declaration of law in a factual vacuum can only result in one certainty: the necessity and likelihood of endless litigation as the full parameters of the standards created by the majority continue to be identified and continue to demand substantial clarification by this Court.

### Establishing Clear Grounds For Invoking the Exception

If this Court is to develop a workable jurisprudence for the application of the crime-fraud exception to the attorney-client privilege and the work-product doctrine, especially in bad-faith insurance cases, I respectfully submit that the Court should first address the shortcomings in the *Zolin* case well-established by numerous authorities. As mentioned above, the failure of the high court to quantify in *Zolin* the amount of proof required at either the threshold stage or during the actual *in camera* review has resulted in a scenario where some courts apply a preponderance of the evidence standard; some courts require clear and convincing evidence; and yet others view it akin to a probable cause hearing.[10] *See Medical Assurance*, 213 W.Va. at 477–78, 583 S.E.2d at

---

9. *See* Susan W. Crump, *The Attorney–Client Privilege and Other Ethical Issues in the Corporate Context Where there is Widespread Fraud or Criminal Conduct*, 45 S.Tex.L.Rev. 171, 178–81 (Winter 2003) (discussing conflicting positions taken by courts based on failure of *Zolin* to identify quantum of proof necessary to make either *prima facie* showing or to establish applicability of crime-fraud exception and remarking that "results of the *Zolin* process can be of questionable fairness"); *accord* Brown, *supra*, 87 Ky.L.J. at 1244–47 (recognizing that dearth of "guidance or continuity ... in the standards applied by the courts in evaluating the substance of the prima facie showing" "reflect[s] a fundamental conflict among the courts concerning the evidentiary threshold that must be met before the attorney-client privilege will be invaded"); *see also id.* at

1236–38 (commenting on "substantial divergence of views concerning the degree of relatedness which must be shown to demonstrate that the attorney-client communication was in furtherance of a crime or fraud").

10. Considering the fact that the majority's author, also the author of the much-relied upon concurrence to *Medical Assurance*, readily acknowledged in that separate opinion the split of opinion existing on the standard of proof necessary to establish the crime-fraud exception, it is even more remarkable that the majority adopted the crime-fraud exception without setting forth any evidentiary standard for its application. 213 W.Va. at 477, 583 S.E.2d at 100 (Davis, J., concurring).

100–101 (Davis, J., concurring) (delineating divergence of authority on evidentiary standard required to establish application of crime-fraud exception including preponderance of the evidence; probable cause; reasonable cause). What this means is that the same set of factual evidence presented to five different tribunals is likely to result in five distinct rulings, none of which follow the same line of reasoning.

Second, I respectfully suggest that the standards governing the antecedent proof that must be adduced by the party desiring to overcome the attorney-client privilege must be clearly set forth before a trial court conducts a review of the challenged documents to ascertain their relationship to the asserted crime or fraud. One commentator has suggested the following as a useful standard for applying the crime-fraud exception to insurance cases:

> A preliminary determination should be made as to whether fraudulent conduct on the part of the insurance company has occurred and whether such conduct was sufficient to overcome the privilege before permitting discovery of attorney-client privileged communications. A factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct of a sufficient magnitude has taken place should be a preliminary trial court determination. Upon this determination, the court should then subject the claims file to an *in camera* inspection to determine whether there is a "foundation in fact" to overcome the privilege based upon an allegation of fraud.

Steven Plitt, *The Elastic Contours of Attorney–Client Privilege and Waiver in the Context of Insurance Company Bad Faith: There's a Chill in the Air,* 34 Seton Hall L.Rev. 513, 571 (2004). Moreover, absent a clearly articulated standard that specifies the degree of relation the subject documents must bear to the crime or fraud in issue, we are assuredly sanctioning an improper and unauthorized broadening of the intended scope of the crime-fraud exception.

Third, given the broad definitions of fraud and constructive fraud adopted by this Court, I respectfully suggest that the application of the exception to asserted matters of fraud should be limited to actual, [intentional] or criminal fraud. *See* Syl. Pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981) (holding that "[t]he essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.' *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737 (1927)"); *cf. * Syl. Pt. 4, *Dodrill v. Nationwide Mut. Ins. Co.,* 201 W.Va. 1, 491 S.E.2d 1 (1996) (setting forth elements of statutory "bad-faith" claim for committing unfair settlement practices in violation of W.Va.Code § 33–11–4(9)). To equate the commission of a statutory violation of bad faith or even a common-law bad-faith insurance claim with what the exception was originally aimed at—preventing the attorney-client privilege from shielding the planning of or current commission of criminal or fraudulent offenses (both of which significantly required the critical element of intent)—is a serious attenuation of the laudatory objective that resulted in the creation of the crime-fraud exception.

Fourth, I respectfully suggest that we must heed the concerns noted by several courts and various commentators. The courts must be vigilant in not permitting the oldest common-law privilege to be cast aside in the guise of assuring open and fair discovery, when the true objective at hand is to assist one recognizable group of litigators while simultaneously singling out one specific business enterprise and denying that business interest the protections that all other businesses are afforded. As one commentator has recognized, "[a]n insurance company should not lose the protection of the attorney-client privilege simply because its litigation opponent raises an issue to which advice of counsel may be relevant." Plitt, *supra,* 34 Seton Hall L.Rev. at 568.

Fifth, I respectfully suggest that the trial courts of this state be urged to view the invasion of the attorney-client privilege as warranted on only rare occasions and only upon clear proof of the alleged fraud or

crime. To do otherwise will surely amount to a demise in the willingness of both corporations and individuals to seek advice from attorneys. No one would seriously dispute that the courts of this state should never be used as a tool for denying protections viewed as intrinsic to our system of jurisprudence. Yet, the majority has set the stage for just such a downward spiraling of these age-old protections.

## Conclusion

In summary, I would have refused the requested writ of prohibition after noting that the attorney-client privileges at issue do apply in first-party bad-faith cases, absent otherwise recognized exceptions. I would have postponed this Court's foray into the crime-fraud exception for another day, preferring to ground any decision to adopt that exception and the explanations regarding the exception's application, to the factual and procedural predicate presented by a complete record in which the issue regarding the exception was squarely presented, briefed, and argued.

Based on the foregoing, I respectfully dissent.

MAYNARD, Chief Justice, concurring.

I concur in the result of this case because I think it clearly and concisely provides a basic primer of the established bad faith law of this State that hopefully will serve as a helpful resource to those folks who insist on pursuing bad faith litigation. I write separately for the sole purpose of clarifying one point in the majority's opinion: the standard of proof applicable to the crime-fraud exception.

As my dissenting colleague has observed, this Court has not definitively enunciated the precise standard of proof that a party must satisfy in order to assert the crime-fraud exception as a means of defeating the protections afforded by the attorney-client privilege and the work product doctrine. As noted in the majority's opinion, a party wishing to assert the crime-fraud exception must first make a prima facie showing that a crime or

fraud has been committed that would invade otherwise privileged attorney-client communications. Once such a prima facie showing has been made and a court ascertains that enough evidence has been presented to overcome this initial obstacle, however, the fundamental question remains as to the standard of proof a party must satisfy to demonstrate that the attorney-client relationship has been tainted by an allegedly criminal or fraudulent purpose. Simply stated, then, the inquiry is what is the quantum of proof needed to establish a criminal or fraudulent scheme.

We long have held that, to establish a cause of action for fraud, the evidence in support of such a claim must be clear and convincing. *See* Syllabus Point 2, in part, *Lutz v. Orinick*, 184 W.Va. 531, 401 S.E.2d 464 (1990) ("A party seeking to prove fraud ... must do so by clear and convincing evidence[.]"). *Accord Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.*, 188 W.Va. 468, 472, 425 S.E.2d 144, 148 (1992) (recognizing that the "elements [of a cause of action for fraud] must be proved by clear and convincing evidence" (citations omitted)). Insofar as the misdeed upon which a party bases his or her assertion of the crime-fraud exception also consists of fraudulent conduct, then the proper quantum of proof likewise would be clear and convincing evidence.

Less certain, however, is the level of proof needed to establish criminal activity for the purposes of asserting the crime-fraud exception. Consistency and the sanctity of the underlying privileges suggest the propriety of adopting a clear and convincing standard in this context as well.[1] As the majority's detailed discussion of the crime-fraud exception demonstrates, reliance on this exception in order to access otherwise privileged information requires a multi-tiered analysis, beginning with a prima facie showing of the exception's applicability in a particular case. Given the numerous criteria already required for its assertion, the adoption of a completely different standard of proof for allegedly criminal, as compared to purportedly fraudulent, conduct would only serve to obfuscate

---

1. The United States Court of Appeals for the Second Circuit has also considered the clear and convincing standard as the standard of proof for

establishing the elements of the crime-fraud exception. *See In re John Doe, Inc.*, 13 F.3d 633, 637–38 (2nd Cir.1994).

the process and result in protracted litigation.

Moreover, insofar as the attorney-client privilege and the work product doctrine are highly regarded, near sacred, protections afforded to confidential attorney-client communications, they warrant substantial protection from improper invasion. *See, e.g.,* Syllabus Point 11, *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988) (recognizing purpose and importance of attorney-client privilege); *State ex rel. United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 444, 460 S.E.2d 677, 690 (1995) (commenting upon sanctity and necessity of work product privilege). Thus, by requiring clear and convincing evidence of allegedly criminal conduct to establish the elements of the crime-fraud exception, the confidentiality that these privileges were designed to protect can be insulated from unwarranted intrusion and disclosure.

For the foregoing reasons, I respectfully concur.

McGRAW, Justice, dissenting.

I dissent from the majority because I believe the trial court fairly afforded Allstate the opportunity to prove that the requested documents and testimony are protected by the attorney-client privilege or the work-product doctrine and further, correctly determined that the repeated assertions by Allstate's counsel that the privileges applied, without more, were not legally sufficient.

As the trial court concluded, Allstate failed (or, more accurately, refused) to demonstrate that the information the plaintiff requested with respect to Allstate's position on the critical issue of "stacking" involved legal advice, was intended to be confidential, and thus, was meant to be privileged. *See* Syl. pt. 7, *United States Fidelity & Guaranty Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995). These elements, which are required to assert the attorney-client privilege, are both basic and well-established. They are not optional. Nevertheless, Allstate utterly failed to satisfy them.

Because, in my view, the trial court committed no error in this case, I respectfully dissent.