**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**STATE OF WEST VIRGINIA EX REL. SCOTT H. KAMINSKI,**
**Petitioners,**

**FILED**
**April 7, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.     No. 15-1100 (Jackson County No. 09-C-31)**

**THE HONORABLE THOMAS C. EVANS, III,**
**JUDGE OF THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA;**
**A.I.O. HOLDINGS, LLC; AND, THOMAS T. MARTIN AND DEBRA MARTIN,**
**Respondents.**

**MEMORANDUM DECISION**

The petitioner herein, Scott H. Kaminski ("Mr. Kaminski"),[1] prior counsel to the respondent herein and defendant below, A.I.O. Holdings, LLC ("AIO"),[2] seeks a writ of prohibition to prohibit enforcement of an order entered October 29, 2015, by the Circuit Court of Jackson County. By that order, the circuit court denied Mr. Kaminski's motion to quash a subpoena issued by the respondents herein and plaintiffs below, Thomas T. and Debra Martin ("the Martins").[3] The order further directed Mr. Kaminski to produce documents as to which Mr. Kaminski sought to invoke privilege due to attorney-client confidentiality.

Upon our review of the parties' arguments, the appendix record, the sealed Affidavit of Mr. Kaminski, and the pertinent authorities, we conclude that the circuit court's order is not clearly erroneous as a matter of law, and, therefore, the requested writ of prohibition should be denied. Because this Court finds no substantial question of law in connection with the petition, a memorandum opinion refusing the requested writ of prohibition is the

---

[1]Scott H. Kaminski is represented herein by David K. Hendrickson and Raj A. Shah.

[2]AIO is represented herein by Robert L. Greer.

[3]The Martins are represented herein by Nicholas S. Preservati and Kelly G. Pawlowski. We observe that a clerical error was made in connection with the filing of the Petition. The Petition failed to identify Debra Martin as a Respondent. Inasmuch as Debra Martin is a plaintiff affected by, and included in, the trial court order, this Court has identified her as a Respondent.

appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

In January 2004, the Martins leased the right to drill for and produce natural gas on approximately sixty-one acres (the "Martin Lease") to Martin Twist Energy Co., LLC ("MTEC"). Pursuant to the lease, MTEC drilled three wells upon the Martins' property. Subsequently, AIO lent $2 million to MTEC. The loan was collateralized by various oil and gas leases and wells, including the Martin Lease and the wells that had been drilled. MTEC defaulted on its loan with AIO. Thereafter, AIO instituted foreclosure proceedings against MTEC in Kentucky. The proceedings resulted in the entry of an Agreed Judgment whereby the entire right and interest in the Martin Lease and the drilled wells was transferred to AIO in October 2008.

In March 2009, the Martins filed suit against AIO. The complaint set forth multiple grounds, including failure to pay appropriate royalties under the Martin Lease. Counsel for AIO, Scott Kaminski, first appeared in April 2009. Subsequently, AIO filed an answer and a counterclaim against Mr. Martin alleging that he interfered with AIO's production from the wells by chasing AIO employees off the property with a gun and prohibiting them from working. A court-ordered mediation held in July 2010 was unsuccessful. A settlement offer presented by the Martins was rejected by Todd Pilcher ("Mr. Pilcher"), who was said to be acting on behalf of AIO.

In November 2010, AIO filed discovery responses signed by Mr. Kaminski and verified by Mr. Pilcher. Among other things, AIO stated that it complied with all obligations under the lease agreement, including the right to operate the wells and the duty to pay royalties/shut-in fees. The wells were represented to be "shut-in" because they were not producing.[4] AIO stated that there were no other persons or entities who had rights to the Martin Lease. AIO also stated that it had numerous communications with the Martins and that AIO employees or contractors had been threatened by the Martins on several occasions. Additionally, AIO filed responses to requests for admissions in May 2011. The responses were signed by Mr. Kaminski but were not verified. AIO admitted that it acquired the Martin Lease through foreclosure proceedings and that it maintained documentation of gas production, revenues and costs incurred with the Martin wells. It also admitted that Martin Twist ("Mr. Twist") and MTEC did not, directly or indirectly, own any interest in AIO.

We note that the record establishes that Mr. Twist, who died during the pendency of the Martin litigation while incarcerated in a federal facility, was a Kentucky-based business

---

[4]The Martin Lease contains a shut-in provision which provides for a payment to be made in the event that the wells are not producing even though they are capable of producing.

2

man involved in the oil and gas industry. Mr. Twist incorporated, owned, operated or managed various Kentucky companies, including MTEC. Mr. Kaminski previously represented Mr. Twist and/or his companies in other matters unrelated to the Martin litigation. Mr. Twist retained Mr. Kaminski to represent AIO in the Martin litigation. Mr. Twist is not an incorporator, owner, manager, operator or agent of AIO.

Discovery disputes resulted in the Martins filing a motion to compel. The Martins sought contact information for Mr. Pilcher and Jonathan Rager ("Mr. Rager"), who had been identified by AIO as a well tender. AIO refused to provide contact information on the grounds that Mr. Pilcher and Mr. Rager were employees who could be contacted only through Mr. Kaminski. A request by the Martins to depose Mr. Twist was rejected by AIO. Mr. Kaminski represented that Mr. Twist knew nothing about the matters at issue with AIO. Mr. Kaminski further stated that the only individual with knowledge regarding AIO and the Martin wells was Mr. Pilcher. The efforts of the Martins to take the deposition of Mr. Pilcher also were frustrated. At a July 2011 hearing, Mr. Kaminski represented to the trial court that the only person he had contact with relative to the case was Mr. Pilcher, who was not, and had never been, a direct employee of AIO. Instead, Mr. Pilcher was an independent contractor who could not be controlled by AIO. Mr. Kaminski further advised the trial court that he did not know the whereabouts of Mr. Pilcher and that recent attempts to contact him had been unsuccessful.

On September 14, 2011, Gregory P. Anastas ("Mr. Anastas") was deposed as the designated representative of AIO. Mr. Anastas testified that the sole member of AIO was Advantage Investments and that he was the only member of Advantage Investments. According to the testimony, AIO had no employees and no day-to-day operations. Mr. Anastas was explicit that he did not learn of the lawsuit until well into 2011, did not know who was managing the lawsuit on behalf of AIO, was unaware of previous court dates, and did not know who retained Mr. Kasminski. Mr. Anastas testified that he did not know who answered the interrogatories on behalf of AIO, did not know of the mediation, did not authorize anyone to go to the mediation on behalf of AIO, and did not know Mr. Pilcher or Mr. Rager. Mr. Anastas stated that he did not know that AIO had an interest in the Martin Lease or the wells. He testified that AIO had no records in its possession related to the Martin Lease wells, never made a royalty payment to the Martins, never received one cent from production from the Martin Lease wells, had no knowledge as to the amount of gas produced from the Martin Lease wells, could not counter the claims that the Martins had not been compensated properly by AIO, and had no knowledge to support the counterclaim against Mr. Martin. Indeed, according to Mr. Anastas, the primary business of AIO was funding Mr. Twist. Mr. Anastas indicated that he had spent several years "chasing after" his money from Mr. Twist and felt like AIO was in a similar position to the Martins.

3

On October 7, 2011, the Martins filed a Motion Requesting Sanctions directed toward Mr. Kaminski. The Martins asserted that the testimony of Mr. Anastas demonstrated that AIO's counsel engaged in egregious conduct in representing AIO for more than two years without the knowledge or authority of AIO. The Martins pointed to false and misleading pleadings and misrepresentations during the discovery process as well as participation in a mediation without the knowledge or authority of AIO. It was suggested that the actions of counsel were taken at the direction of an undisclosed third-party, who retained Mr. Kaminski, paid the fees, and steered the litigation. The request for sanctions also included recent photographic documentation that the wells were not shut-in, but, rather, were producing gas.

Also on October 7, 2011, Mr. Kaminski reviewed an Operating Agreement for the first time. He had no prior knowledge of the Operating Agreement. The Operating Agreement provided that 530 West Main St. Properties, LLC ("530 West Main"), one of Mr. Twist's companies, had the right to operate the Martin Lease wells. The Operating Agreement contained mutual indemnification language requiring 530 West Main and AIO to hold harmless and indemnify one another "from and for any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation on account of, or in any way growing out of, this Operating Agreement or 530 West Main's management of the assets. . . . " Mr. Kaminski served as counsel to 530 West Main's owner, Mr. Twist, as to other unrelated matters. He had never served as counsel for 530 West Main. Based on the motion for sanctions and the Operating Agreement, and after consultation with the West Virginia Office of Disciplinary Counsel, Mr. Kaminski moved to withdraw as counsel and disavowed all previously made discovery responses. The trial court granted the motion to withdraw as counsel by order entered on November 18, 2011.

Thereafter, AIO waived its attorney-client privilege in regard to any communications between Mr. Kaminski and AIO, people acting on behalf of AIO, and people purporting to act on behalf of AIO. AIO then provided all the communications it had with Mr. Kaminski to the Martins. This consisted of one document that was an email chain between Mr. Anastas and Mr. Kaminski discussing the scheduling of the deposition of Mr. Anastas.

On January 22, 2013, the Martins issued a subpoena seeking various documents from Mr. Kaminski, which can be separated into four groups. The first group includes AIO documents representing all communications between Mr. Kaminski and AIO. The second group of documents are all communications between Mr. Kaminski and Mr. Pilcher. The third group of documents are all communications between Mr. Kaminski and Mr. Rager. The fourth group includes all documents memorializing all communications and legal invoices between Mr. Twist and all related Twist entities and Mr. Kaminski related to the Martin case. All requested documents were solely for communications related to the Martin case.

Documents regarding Mr. Kaminski's work for Mr. Twist and/or his companies in other unrelated matters were not sought.

On January 31, 2013, Mr. Kaminski filed a Motion to Quash the Subpoena. Among other things, it was asserted that the communications pertaining to this matter, if any, with Mr. Pilcher, Mr. Rager, Mr. Twist, MTEC, or any other entity that Mr. Kaminski is aware of and in which Mr. Twist had an interest, may be subject to the attorney-client privilege, and such privilege had not been waived by any of those individuals or entities. Mr. Kaminski acknowledged that AIO waived attorney-client privilege as to its communications with Mr. Kaminski and communications between Mr. Kaminski and third parties purporting to act on AIO's behalf. However, Mr. Kaminski asserted that AIO had no capacity to waive the privilege as to third parties. At some point, Mr. Kaminski abandoned his privilege claims as to communications with Mr. Pilcher, and Mr. Rager. What remains at issue is the claim of privilege as to documents regarding Mr. Twist and any Twist-related entities.

The Martins requested that a privilege log be provided. It is represented by counsel for the Martins, that Mr. Kaminski refused to provide a privilege log on the grounds that it would be a "waste of time" to respond to the Martin "fishing expedition." No privilege log was provided to the Martins. No privilege log, and no documents as to which attorney-client privilege was invoked, were provided to the trial court so that an *in camera* review could be conducted. Likewise, no privilege log and no documents have been provided to this Court to permit an *in camera* review.

The trial court held a hearing on Mr. Kaminski's Motion to Quash. No transcript of that hearing has been provided to this Court for review and consideration. By order entered on October 29, 2015, the trial court denied Mr. Kaminski's motion and directed him to provide responsive documents to the Martins within fourteen days. The trial court's ruling was founded on several conclusions that the procedural and substantive requirements for successfully invoking the attorney-client privilege had not been met. This finding was based on the lack of a privilege log, the failure to produce documents for an *in camera* review, the lack of identity as to the individual or person on whose behalf the attorney-client privilege was being invoked, and the fact that there was no individual or entity other than AIO with whom Mr. Kaminski had an attorney-client relationship regarding the Martin case. The trial court also found that, even if there was an attorney-client privilege, the documents requested nevertheless would be discoverable because the only client in the case was AIO, and it had waived the privilege in writing and by providing the Martins with copies of confidential attorney-client communications. Next, the trial court found that even if the communications were privileged and the privilege had not been waived, the communications still would be discoverable due to the application of the crime-fraud exception to the attorney-client privilege. It also held that the legal invoices were not privileged. Moreover, the trial court

ruled that the Rules of Professional Conduct setting forth duties of confidentiality do not bar disclosure of the requested documents. Finally, the trial court rejected Mr. Kaminski's argument that the subpoena does not seek information related to potential claims or defenses in the case and improperly involved satellite litigation finding such claims were without merit. From this adverse ruling, Mr. Kaminski seeks extraordinary relief from this Court to prohibit the trial court from enforcing its order. Mr. Kaminski challenges the order of the trial court in virtually all respects.

AIO filed a summary response in this Court and did not participate in oral argument. The position of AIO is straightforward. AIO asserts that it is the sole holder of the attorney-client privilege, irrespective of the protestations of others claiming to act on its behalf. Thus, the only person with authority to create or waive the privilege for AIO is its corporate representative, Mr. Anastas. Further, AIO argues that Mr. Kaminski cannot prevail in his assertion of attorney-client privilege as to other parties because he has presented no evidence to suggest that a privilege exists. The response of the Martins to the Petition for a Writ of Prohibition consists of arguments supportive of all the findings of the trial court. The Martins serially address the arguments advanced by Mr. Kaminski with reasoning that tracks that announced in the trial court's order.

In this proceeding, we are asked to prohibit enforcement of a discovery ruling ordering an attorney to disclose communications that are purported to be subject to confidentiality arising from the attorney-client privilege. It is well established that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992). Also, "[w]hen a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syl. pt. 3, *State ex rel. USF & G v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995). *See also* Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) (setting forth the factors to be considered in determining whether a writ of prohibition should issue). With these standards in mind, we now consider the merits of Mr. Kaminski's request for a writ of prohibition.

Rule 26(b)(1) of the West Virginia Rules of Civil Procedure provides that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. The Rule further instructs that discovery may relate to the claim or defense of the party seeking discovery or to the claim or defense of any other party. Generally speaking, the scope of discovery is broad and the process is such that fairness in fact-finding is promoted by requiring full disclosure of relevant matters. However, the clear language of Rule 26(b)(1) dictates that privileged matters, even when relevant, are not

discoverable. In order to protect the sanctity of certain relationships, exceptions have been established that limit or prohibit access to materials generated in the course of a confidential relationship. In this regard, we have held that "many documents that could very substantially aid a litigant in a lawsuit are neither discoverable nor admissible as evidence." Syl. pt. 12, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 213 W. Va. 457, 583 S.E.2d 80 (2003). One of the special relationships to which privilege applies within the restrictions imposed by Rule 26(b)(1) is the attorney-client relationship.

We first address the issue of the existence of an attorney-client privilege. The attempt at invoking privilege is made in the unique setting of a third-party payer of attorney's fees on behalf of an entity that was unaware that representation was undertaken on its behalf. As this Court has observed, "[t]he attorney-client privilege was developed as a means of protecting the confidential relationship shared between a client and his/her counsel." *State ex rel. Allstate Ins. Co. v. Madden*, 215 W. Va. 705, 713, 601 S.E.2d 25, 33 (2004). The attorney-client privilege originated at common law. The privilege has as its goal the promotion of full and frank disclosure without fear or apprehension so that informed and sound legal advocacy and advice results. *See State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W. Va. 316, 326, 484 S.E.2d 199, 209 (1997).

In order to shield materials from discovery based upon the attorney-client privilege, certain enumerated criteria must be fully satisfied.

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.

Syl. pt. 2, *State v. Burton*, 163 W. Va. 40, 254 S.E.2d 129 (1979). Moreover, the burden of establishing the existence of the attorney-client privilege in all its elements rests upon the person asserting it. *U.S. F&G* at 194 W. Va. at 438, 460 S.E.2d at 684.

As to the first element, that both parties must have contemplated the existence of an attorney-client privilege, the trial court found that there was no proof offered that either Mr. Kaminski or any party other than AIO contemplated the existence of an attorney-client relationship with respect to the Martin litigation.

As to the second element, that advice must have been sought by the client from the attorney in his/her capacity as an attorney, the trial court again observed that no evidence

7

existed about any client other than AIO. The trial court further found that it was not possible that the client could be Mr. Twist because Mr. Kaminski already had represented to the court that Mr. Twist had no knowledge about the case, no interest in the Martin Lease due to foreclosure, and the Martins attempt to depose Mr. Twist, as a corporate representative of AIO, was refused by Mr. Kaminksi on the grounds that Mr. Twist knew nothing about the claims of the Martins.

The third element addressed by the trial court was that the communications must be identified to be confidential. Here, the trial court found that the communications were not identified, and no proof had been offered for the claim that any communications were considered by Mr. Kaminski and the purported client to be confidential. The trial court also observed that it was difficult to envision how any confidentiality could be shown when Mr. Kaminski stated in open court that the only person with whom he had discussed the case, from its inception until at least June of 2011, was Mr. Pilcher. A review of the record commands the conclusion that the findings of the trial court do not constitute clear error.

Presently, Mr. Kaminski argues that because the 2008 Operating Agreement between AIO and 530 West Main had a mutual indemnity provision, communications between those associated with 530 West Main and Mr. Kaminski are subject to confidentiality. Several flaws in this argument are readily apparent. Mr. Kaminski had no knowledge of the Operating Agreement and could not have contemplated any confidential attorney-client relationship which may have flowed from it at any point in time at issue. The first element to establish an attorney-client relationship requires that both parties contemplate the existence of the relationship.

Also flawed are Mr. Kaminski's attempts at an analogy to insurers. His argument is that, by virtue of the Operating Agreement, 530 West Main functioned like an insurer for AIO such that it had an attorney-client relationship with Mr. Kaminski that AIO could not waive. The analogy fails because the Operating Agreement does not include any language that remotely suggests that it imposed a duty to defend. Even if such a duty was to be found, surely the party being defended would be aware of the litigation and the undertaking of a defense. Here, AIO had no knowledge of the claims, the representation, or the defense.

Additionally, Rule 1.8(f) of the West Virginia Rules of Professional Conduct provides that a lawyer cannot accept compensation for representing a client from anybody other than the client unless three criteria are met. First, the actual client must give consent. Second, there can be no interference with the lawyer's independent judgment. Third, all information relating to representation of the client must be protected as confidential.

8

While Mr. Twist may have retained and paid Mr. Kaminski, the record does not establish how the Rule 1.8(f) criteria were met. Rather, what is plainly established is that no consent was given by AIO.

The attorney-client privilege belongs to the client. Typically, the client alone may waive the privilege. *USF &G*, 194 W. Va. at 442, 460 S.E. 2d at 688. The only privilege with respect to the Martin litigation belongs squarely with AIO, who is entitled to waive it regardless of the protestations of others who claim to be acting on behalf of AIO. We observe that all parties appear to accept the existence of an attorney-client relationship between AIO and Mr. Kaminski. The record establishes that AIO has expressly waived the privilege and provided documents to the Martins. The trial court's conclusion that Mr. Kaminski failed to establish the existence of an attorney-client relationship with Mr. Twist and/or 530 West Main regarding the matters at issue with respect to the Martin complaint is not clearly in error and will not be disturbed.[5]

We next recognize that Mr. Kaminski makes an undeveloped work product, opinion privilege, and quasi-attorney privilege argument. The record before us does not reflect that these arguments were made before the trial court. Accordingly, this Court will not entertain these arguments. Moreover, we decline to address undeveloped arguments made only in passing. *See State v. LaRock*, 196 W. Va.294, 302, 470 S.E.2d 613, 621 (1996).

We now address the claim by Mr. Kaminski that the West Virginia Rules of Professional Conduct apply to this matter such that he cannot be compelled to disclose client confidences. We find that Mr. Kaminski has failed to distinguish the evidentiary attorney-client privilege and the professional and ethical duties of confidentiality. The trial court correctly found that the evidentiary privilege exists apart from, and is not co-extensive with, the ethical confidentiality precepts. *See* Syl. pt. 3, *Lawyer Disciplinary Bd.*

[5]We observe that the Petition does not challenge the trial court's conclusion that even if an attorney-client relationship existed in this case between Mr. Kaminski and Mr. Twist, the legal invoices for work performed are not privileged. Thus, that issue is not before this Court, and we decline to address it. On that basis alone, the invoices for work performed must be produced in accordance with the trial court's directive. This Court "cannot concoct or resurrect arguments neither made nor advanced by the parties." Syl. pt. 13, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751. We note that in *State ex rel. Montpelier U.S. Insurance Co. v. Bloom*, 233 W. Va. 258, 757 S.E.2d 788 (2014) (per curiam), this Court found that, generally speaking, attorney retainer agreements and billing statements are not privileged under the rubric of either attorney-client or work product privilege.

9

*v. McGraw,* 194 W. Va. 788, 461 S.E.2d 850 (1995). Rule 1.6 of the West Virginia Rules of Professional Conduct provides for the confidentiality of information relating to the representation of a client. Confidentiality applies even after withdrawal from representation. Here, Mr. Kaminski recognized his potential duties, consulted with disciplinary counsel, withdrew from representation, and disavowed pleadings. He has continued to assert and maintain confidentiality. Nevertheless, Rule 1.6(b)(6) specifically provides that an attorney may be compelled to reveal information relating to representation of a client so as to comply with a court order. That is the situation confronting Mr. Kaminski. The trial court did not commit clear error when it determined that the West Virginia Rules of Professional Responsibility do not bar disclosure of the contested documents.

Next, we consider Mr. Kaminski's assertions that the discovery sought through the subpoena is not permissible as it does not relate to claims or defenses of the parties in the Martins' litigation. Mr. Kaminski stated that the motion for sanctions is brought pursuant to Rule 11 of the West Virginia Rules of Civil Procedure, which relates to signing of pleadings, motions, and other papers; representations to the court; and sanctions. Accordingly, Mr. Kaminski argues that this Court should follow the reasoning of various federal courts that caution against "getting bogged down in satellite litigation" relative to Rule 11 sanctions issues. While this appears to be a novel issue, it is not necessary to wade into a consideration of the bounds of permissible discovery relative to a Rule 11 issue, particularly given the limited record and posture of the matter before us. First, the Martins correctly argue that the discovery is for the purpose of developing their claims. In that regard, the discovery is directed at sorting out the involvement of Mr. Twist and others with the business of AIO and with any negligence and/or fraud related to leasing and operating the Martin wells. Second, the motion for sanctions was not limited to Rule 11. The motion also was brought pursuant to Rule 16 of the West Virginia Rules of Civil Procedure, which addresses pretrial conferences, scheduling, and management of actions, and provides for sanctions for lack of good faith participation by either a party or a party's lawyer. Additionally, the motion was brought pursuant to Rule 37 of the West Virginia Rules of Civil Procedure, which provides for sanctions with respect to the failure to cooperate in discovery. Mr. Kaminski did not challenge the discovery with respect to either Rule 16 or Rule 37. Therefore, regardless of the assertions with respect to discovery under Rule 11, the Martins were entitled to proceed on the basis of Rules 16 and 37. This Court cannot create arguments that have not been advanced by the parties. *See* Syl. pt. 13, *W. Va. Reg'l. Jail & Corr. Facility Auth. v. A.B.,* 234 W. Va. 492, 766 S.E.2d 751 (2014).

Although we have concluded that the trial court correctly found that an attorney-client privilege with third parties has not been established by Mr. Kaminski, we are nevertheless compelled to address his failure to provide a privilege log and documents for

the court to review *in camera*. Mr. Kaminski argues that he is not invoking the privilege as to specific documents, but rather as to all communications with a client. He asserts that the issue is not about one document versus another. Instead, he is seeking to protect all communications such that a privilege log would have been of no benefit.

This Court observes that one cannot prevent discovery by merely asserting that the material sought is privileged. A blanket claim of privilege is insufficient to shroud communications in secrecy. *See* Syl. pt. 1, *AT&T of W. Va., Inc. v. Public Serv. Comm'n of W. Va.,* 188 W. Va. 250, 423 S.E.2d 859 (1992). The procedural requirements that must be met in order to invoke the protection of privilege are well-established. The procedure requires both a privilege log and the production of communications *in camera* to the court for review. *See* Syl. pt. 2*, State ex rel. Nationwide Mut. Ins. Co. V. Kaufman*, 222 W. Va. 37, 658 S.E.2d 728 (2008) (holding that blanket assertions of privilege are insufficient and setting forth procedural requirements for invocation of privilege). This Court recognizes that the privilege log is a critical part of the procedure when a party seeks to shield documents from disclosure. Blanket privileges such as those asserted by Mr. Kaminski are not, and cannot be, permissible. Without question, the claim of privilege must be reviewable. The failure to provide the privilege log and the documents for *in camera* review would also be a basis for denying the requested writ of prohibition.[6]

For the foregoing reasons, the requested writ of prohibition is denied. The order of the trial court which denies Mr. Kaminski's Motion to Quash and directs him to provide responsive documents to the Martin's does not constitute clear, substantial legal error and is, therefore, enforceable.

Writ Denied.

**ISSUED: April 7, 2016**

**CONCURRED IN BY:**

---

[6]As a final matter, the trial court engaged in an analysis regarding application of the crime-fraud exception, which operates to remove the privilege attaching to communications between a client and his or her counsel that were made in furtherance of a fraudulent or criminal scheme. *See* Syl. pt. 7, *Allstate Ins. Co.*, 215 W. Va. 705, 601 S.E.2d 25. Inasmuch as this Court has concluded that Mr. Kaminski failed to prove the elements of attorney-client privilege as to the third parties and inasmuch as AIO, the only party deemed to have the privilege, has waived it, there is no basis for engaging in an analysis about an exception to the privilege.

11

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II